UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Wallace S. Nolen,               :
                                :
        Plaintiff,              :
                                :
        v.                      :    Case No. 2:11-cv-183
                                :
Aldrich Public Library,         :
Nancy F. Pope, Karen Lane,      :
Jane Doe 1-20, City of          :
Barre, Timothy Bombardier,      :
Andrew Marceau, and Ross        :
Weiland,                        :
                                :
        Defendants.             :

OPINION AND ORDER
(Docs. 40, 41, 50)

Plaintiff Wallace Nolen, proceeding *pro se*, brings this action claiming that a sign-in sheet at a local public library violated state and federal law.  Nolen also claims that his treatment by library staff, and later the Town of Barre police, was unlawful.  Defendants in the case are the Aldrich Public Library ("Library"); Library chairperson Nancy Pope; Library Director Karen Lane; Library employees Jane Doe 1-20; the City of Barre; Barre Police Chief Timothy Bombardier; Barre Deputy Police Chief Andrew Marceau; and Barre police officer Ross Weiland.[1]

---

[1] The Court will refer to the Library, together with Defendants Pope, Lane, and Jane Doe 1-20, as the "Library Defendants."  The Court will refer to the City of Barre, Chief Bombardier, Deputy Chief Marceau, and Officer Ross Weiland collectively as the "City

Now before the Court are Defendants' motions to dismiss.  For the reasons set forth below, the Library's motion to dismiss (Doc. 40) is GRANTED; the City Defendants' first motion to dismiss (Doc. 41) is DENIED; the City Defendants' second motion to dismiss (Doc. 50) is GRANTED; and this case will be DISMISSED unless Nolen files an Amended Complaint within thirty (30) days.

<u>Factual Background</u>

For the limited purpose of ruling on the pending motions to dismiss, the Court will accept the factual allegations set forth in the Complaint as true.  Nolen is a resident of Barre, Vermont.  The Library is located in Barre, and receives approximately half of its funding from the City.  Nolen frequented the Library between December 1, 2005 and June 3, 2011.

The Library offers computer access to its patrons.  In order to use a Library computer, a patron is required to sign in on a paper register.  The register is open to all, and thus the names entered on the register may be viewed by

---

Defendants."  Also, with respect to Ross Weiland, the City Defendants report that "[a]t the pertinent time, the City of Barre Police Department employed an officer named P. Weiland Ross."  (Doc. 50 at 1 n.1).  The Complaint also refers to this officer as "ROSS."  (Doc. 3 at 11-12.)  The Court will therefore refer to this Defendant as "Ross."

2

other patrons.  Nolen claims that the register constitutes a patron transaction record under 22 V.S.A. § 171,[2] and that state law requires libraries to keep such records confidential unless certain conditions, such as the patron's consent to disclosure, are satisfied.  *See* 22 V.S.A. § 172. The statute also provides a private right of action for unlawful disclosure.  *See id.* at § 173.  The Complaint alleges, without elaboration, that "[t]he customs, policies, rules and/or procedures of [the Library] also violate provisions of the Electronic Communications Privacy Act - 18 U.S.C. § 2703(c)"  (Doc. 3 at 6.)

Nolen's "Second Cause of Action" depicts a series of events that ultimately led to him being barred from re-entering the Library.  In August 2010, Nolen asked the Library to provide him with a copy of the Vermont State Bar directory.  He claims that he subsequently returned the book on time to a receptacle outside the Library's front door. Nonetheless, in October 2010 he received a notice that the book was overdue, and was assessed a fee equal to

---

[2]  A "patron transaction record" is defined, in part, as a record that contains "names or other personal identifying information that discloses an individual's activities within a library, including the materials that have been viewed in print or electronic form . . . or any other library service or consultation that the patron has requested."  22 V.S.A. § 171.

approximately three times the book's value.

When he received the notice, Nolen immediately called the Library and spoke with a woman who allegedly refused to disclose her name.  Nolen asked if the book had perhaps been mis-shelved, and was told he would receive a call back within the same business day.  The next day, after not receiving a return call, Nolen traveled to the Library and asked if the book, which had been accessed through an inter-library loan, had been accidentally placed on the Library's own shelves.  The book was then located.

Nolen proceeded to ask questions about Library practices and policies with respect to re-shelving, the sending of notices for overdue books, and methodologies for calculating the replacement price for a book.  When he was informed that replacement rates were set by the State Library, he contacted both the State Chief Librarian and Aldrich Library staff requesting a review of the reimbursement schedule.  Nolen claims that in each case, library personnel refused to alter the schedule to make it more reasonable.

A few months prior to this incident, Nolen had asked permission to use the Library computers for a longer time

4

than usual, and was granted such permission during off-peak periods.  Approximately one month after Nolen's inquiries regarding overdue books and the reimbursement schedule, Defendant Lane, the Library Director, and other Library staff revoked his special access to the computers.  Nolen was allegedly told that because he had protested the Library's policies and procedures, the staff felt that he should not be receiving "special treatment."  Nolen complained to Library supervisors, including Defendant Lane, but the denial of special access was not reconsidered.

On or about June 1, 2011, Nolen was using his own personal computer at a table in the Library that was designated for such use, when he received two urgent telephone calls a few minutes apart regarding the results of medical tests.  In each instance, Nolen explained to the caller that he could not talk and would call back in a few minutes.  As he was packing his belongings to leave, a librarian allegedly came over to him and began yelling that he should not use his cell phone in the Library.  Nolen claims that he apologized and tried to explain that he was in the process of leaving, but the librarian continued to insist that he leave.

5

On or about June 8, 2011, Nolen returned to the
Library, wrote his name on the sign-in sheet for use of
Library computers, and received a password.  While use of
the computers was limited to thirty minutes per session,
patrons were allowed to request additional time.  Nolen made
such a request, and was informed by "the same person who was
involved in the cell phone incident above" that she would
add extra time, and that he would not be required to sign in
again with a new password.  (Doc. 3 at 10.)  When Nolen
returned to the computer, however, the re-set had not been
performed.  Nolen was then assigned a new password, and was
able to use the computer for the additional thirty-minute
time period.

        After he finished using the computer, Nolen asked to be
provided with the names of the Library's board members.  The
librarian allegedly "began to rant on that Plaintiff was
given special privileges and that she had 'checked out'
Plaintiff on the Internet and that she saw that Plaintiff
was a 'trouble maker.'"  *Id.* at 11.  Nolen left the Library
and called Defendant Pope, the Library's board chair.  He
informed Pope that the Library was "clearly in violation of
state statutes and even federal statutes with respect to

unauthorized release of Plaintiff's name by reasons of the sign-in sheet procedure." *Id.* He also advised Pope that he was prepared to "seek judicial intervention." *Id.* Pope informed Nolen that she would need to consult with Lane and other Library staff.

Pope subsequently telephoned Nolen, told him that the Library staff had met, and that he would soon be receiving a letter. When Nolen asked about the contents of the letter, Pope reportedly declined to provide details. Shortly thereafter, Defendant Ross, a Barre police officer, rang Nolen's front door bell. When Nolen arrived at the door, Ross handed him a piece of paper entitled "NO TRESPASS ORDER" and informed him that he was not permitted to enter the Library under any circumstances. A few days later, Nolen received a copy of the order in the mail.

Nolen now claims that not only did the computer sign-in sheet violate state and federal statutes, but that his treatment by Defendants violated his constitutional rights. Specifically, he claims that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment "by discriminating against the Plaintiff in its alleged enforcement of unwritten rules and regulations . . .

7

." *Id.* at 12.  Nolen further claims that he was retaliated against for exercising his federal and state rights.  In addition to his federal constitutional claims, Nolen asserts state law claims of intentional infliction of emotional distress and defamation.  As remedies, Nolen seeks both injunctive and declaratory relief, as well as $5,000,000 in damages against the Library for public display of the computer sign-in sheet.

<u>Procedural Background</u>

Although this case has been pending since July 2011, it is still in the early stages from a procedural perspective, in part because of multiple stays granted at Nolen's request.  Nolen first moved to stay all proceedings on September 14, 2011 on the basis of health issues, and the Court granted a stay through December 22, 2011.  Prior to expiration of this first stay, Nolen submitted a letter from a doctor, prompting the Court to extend the stay through April 15, 2012.  Nolen was also directed to contact the Court prior the expiration of the extended stay or risk dismissal for failure to prosecute.

Nolen did not contact the Court prior to the expiration of the stay, and on April 17, 2012 the Library Defendants

moved to dismiss for failure to prosecute.  The Court
subsequently issued an order requiring Nolen to respond
within ten days as to his ability to proceed.  On May 2,
2012, Nolen moved for another extension of the stay, and the
Court granted the motion.

The Court held a status conference on November 14,
2012, and based upon Nolen's representations, lifted the
stay.  On December 14, 2012, the Library Defendants moved to
dismiss for failure to state a claim, and on February 4,
2013, the City Defendants moved to dismiss without prejudice
on the basis of Nolen's representation that he was too ill
to proceed.  The Court held a hearing on the pending motions
on March 27, 2013, and after hearing from the parties,
ordered Nolen to respond to all outstanding discovery
requests, as well as to the Library's motion to dismiss.

On April 30, 2013, Nolen filed an "Affirmation" in
opposition to the Library's motion to dismiss.  That same
day, the City Defendants filed a second motion to dismiss,
arguing that Nolen had failed to state a plausible claim for
relief.  The City Defendants' second motion is unopposed.
Defendants' three motions to dismiss are now before the
Court.

Discussion

I.   Library Defendants' Motion to Dismiss

The Library Defendants have moved to dismiss each of Nolen's claims pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 40.)  The federal law claims being brought against the Library Defendants include Nolen's equal protection claim, his claim under the Electronic Communications Privacy Act, and an allegation of Patriot Act violations.  Nolen may also be alleging First Amendment retaliation, although that claim is not clearly pled.  Nolen's state law claims against the Library Defendants consist of a cause of action under Vermont's library confidentiality law, a defamation claim, and a claim of intentional infliction of emotional distress.

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the Complaint's factual allegations are presumed true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Further, while *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, *see Harris v. Mills*, 572 F.3d 66,

71-72 (2d Cir. 2009), the Court must review *pro se* submissions with "special solicitude" and interpret them to raise the "strongest [claims] that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (emphasis in original) (internal quotation marks omitted).

A.   Equal Protection Claim

The Library Defendants first move to dismiss Nolen's equal protection claim, which alleges that Defendants discriminated against Nolen in their application of "unwritten rules and regulations for which Plaintiff has never received a copy of the same assuming that they exist as applicable to the acts/omissions complained of herein." (Doc. 3 at 12.)

The Fourteenth Amendment's Equal Protection Clause requires that the government treat similarly-situated persons equally. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a

result of intentional or purposeful discrimination.").[3]
When, as here, a plaintiff is not claiming racial or some
other sort of class-based discrimination, he may still
prevail on a "class of one" or selective enforcement claim.
*See Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir.
2000).  In *Prestopnik v. Whelan*, the Second Circuit
explained the difference between a class of one equal
protection claim and a more traditional equal protection
claim:

> The Equal Protection Clause requires that the
> government treat all similarly situated people
> alike.  While this clause is most commonly used to
> bring claims alleging discrimination based on
> membership in a protected class, it may also be
> used to bring a "class of one" equal protection
> claim.  In a "class of one" case, the plaintiff
> uses the existence of persons in similar
> circumstances who received more favorable
> treatment than the plaintiff to provide an
> inference that the plaintiff was intentionally
> singled out for reasons that so lack any
> reasonable nexus with a legitimate governmental
> policy that an improper purpose — whether personal
> or otherwise — is all but certain.

249 F. App'x 210, 212-13 (2d Cir. 2007) (internal
alterations, citations, and quotation marks omitted).
Accordingly, a "class of one" plaintiff must show that (1)
"[he] has been intentionally treated differently from others

------

[3] The Library Defendants concede that, for purposes of a Section
1983 claim, they were state actors.

similarly situated and" (2) "there is no rational basis for
the difference in treatment." *Willowbrook v. Olech*, 528
U.S. 562, 564 (2000).  Likewise, a selective enforcement
claim requires a showing that "a plaintiff has been treated
different from similarly situated individuals" based upon
impermissible considerations. *Goldfarb v. Town of West
Hartford*, 474 F. Supp. 2d 356, 368 (D. Conn. 2007); *see also
Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d
Cir. 2007).

Nolen claims that he was compelled to use a sign-up
sheet and comply with other Library rules.  Instead of
arguing differential treatment with respect to use of the
sign-up sheet, he contends that the Library "violated
claimant['s] rights by forcing claimant *and all other person
similarly situated* to" use the sheet.  (Doc. 3 at 16)
(emphasis added).  He also complains of discrimination in
the enforcement of "unwritten rules and regulations,"
although it is not clear what those rules were or whether
they were applied differently in his case.

Differential treatment of similarly situated persons is
critical to an equal protection claim.  *See Fortress Bible
Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) ("The

13

purpose of requiring sufficient similarity is to make sure
that no legitimate factor could explain the disparate
treatment.").  "While a plaintiff is not required to proffer
evidence of similarly situated individuals at the motion to
dismiss stage, the court still must determine whether, based
on a plaintiff's allegations in the complaint, it is
plausible that a jury could ultimately determine that the
comparators are similarly situated." *Vaher v. Town of
Orangetown*, 2013 WL 42415, at *20 (S.D.N.Y. Jan. 2, 2013);
*see also Jones v. Bay Shore Union Free School Dist.*, 2013 WL
2316643, at *8 (E.D.N.Y. May 28, 2013).

Nolen has not identified his equal protection cause of
action as either a "class of one" or selective enforcement
claim.  Nor has he alleged differential treatment of
"comparators."  Consequently, the Complaint fails to
properly assert the basis for an equal protection claim, and
that claim is DISMISSED, with leave to amend as set forth
below.

B.   Retaliation Claim

Giving Nolen's *pro se* Complaint the required liberal
reading, he may also be bringing a claim of First Amendment
retaliation.  Whether that claim is brought against the

14

Library Defendants is unclear.

The Complaint's only specific First Amendment claim is against Officer Ross for allegedly violating Nolen's right to freedom of speech when Ross delivered the notice of trespass to Nolen's home. (Doc. 3 at 12). The Complaint also alleges generally that "defendants individually and in concert violated Plaintiff's Constitutional Right and other rights by retaliating against the Plaintiff for his attempts to exercise his federal and state rights." *Id.* at 13. It is not readily apparent from this allegation what "Constitutional Right" was violated, which "rights" Nolen was attempting to exercise, or which "defendants" are allegedly liable. Given this vague pleading, it is not surprising that the Library Defendants have not addressed this allegation.

To establish a First Amendment retaliation claim, Nolen must show that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of [his] First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010). The Second Circuit has held that

15

the right to complain to public officials is conduct protected by the First Amendment. *See Dougherty v. Town of North Hempstead*, 282 F.3d 83, 91 (2d Cir. 2002); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194-95 (2d Cir. 1994). Furthermore, the rights incorporated in the First Amendment include the right to be free from retaliation for exercising those rights. *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 240 (E.D.N.Y. 2009).

Again, the Complaint does not make clear which "rights" Nolen is claiming were the subject of retaliation. Even if the Court infers that Nolen is claiming retaliation based upon his complaints about Library procedures, the Complaint is particularly unclear as to whether the retaliation resulted in "actual chilling." *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011);[4] *see also MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 369 (E.D.N.Y. 2010) (granting motion to dismiss where plaintiff had not set forth any factual allegations that he desired to exercise

---

[4] In *Zherka*, the Second Circuit acknowledged that, "in limited contexts, other forms of harm have been accepted in place of this 'actual chilling' requirement." 634 F.3d at 645 (citing *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002) (retaliatory revocation of plaintiff's building permit); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994) (retaliatory failure to enforce zoning laws)). Because of Nolen's vague pleadings, it is difficult to discern precisely what sort of harm is being alleged in the retaliation claim.

his First Amendment rights but was chilled); *Mangano v. Cambariere*, 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007) ("Here, plaintiff fails to proffer evidence of even one example of a situation in which she desired to exercise her First Amendment rights but was chilled by defendants' alleged actions."). Given the vague and conclusory nature of Nolen's retaliation claim – that unspecified "defendants" are liable for non-descript retaliation – the Court will not require a response from the Library on this claim. That said, and as set forth below, Nolen may wish to clarify his claim in an Amended Complaint.

C.   Statutory Claims

Nolen's only other federal law claims against the Library Defendants are for alleged violations of the Electronic Communications Privacy Act and the Patriot Act. The Court finds that these statutes do not apply in this case.

The Electronic Communications Privacy Act of 1986 (hereinafter "ECPA" or "Act")

> was enacted to protect the privacy of users of
> electronic communications by criminalizing the
> unauthorized access of the contents and
> transactional records of stored wire and
> electronic communications, while providing an
> avenue for law enforcement entities to compel a

17

> provider of electronic communication services to
> disclose the contents and records of electronic
> communications.

*In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 286 (4th Cir. 2013).  Accordingly, the ECPA requires "a provider of electronic communication service or remote computing device" to disclose to the government certain subscriber information when presented with an appropriate warrant, supboena, or court order.  18 U.S.C. § 2703.  The Act also provides a remedy in "a civil action" for any violation committed "with a knowing or intentional state of mind."  18 U.S.C. § 2707.

Nolen's Complaint does not articulate how the Library's computer policies, including the sign-up sheet, violated the ECPA.  There is no claim that the government sought specific information, or that there was a knowing violation of the Act.  At most, Nolen appears to contend that there is a *potential* for uncovering information about his computer usage.  Given the intent and scope of the ECPA, however, it is not apparent how the use of a sign-up sheet by a public library violated the Act.

Nolen's claim of a Patriot Act violation is even more vague.  While the ECPA claim cites a specific section of the

statute, there is no such citation to any portion of the
Patriot Act.  The Library, construing the Complaint broadly,
posits that Nolen may be asserting a claim under the Patriot
Act's provision allowing a civil cause of action against
entities "other than the United States."  18 U.S.C. § 2520.
That provision permits an action by "any person whose wire,
oral, or electronic communication is intercepted, disclosed,
or intentionally used in violation of this chapter."  *Id.*
There is no allegation in the Complaint of such conduct, and
thus it is again unclear how the Library Defendants might
have violated the Patriot Act.

As Nolen has failed to set forth a plausible claim for
relief under either the ECPA or the Patriot Act, those
claims are DISMISSED.

D.   State Law Claims

When all federal claims are dismissed, a federal court
usually does not take jurisdiction over the remaining state
law claims.  *See Valencia ex rel. Franco v. Lee*, 316 F.3d
299, 305 (2d Cir. 2003) )("in the usual case in which all
federal-law claims are eliminated before trial, the balance
of factors to be considered under the pendent jurisdiction
doctrine — judicial economy, convenience, fairness and

comity — will point toward declining to exercise
jurisdiction over the remaining state-law claims"); *see also*
*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)
("Certainly, if the federal claims are dismissed before
trial . . . the state claims should be dismissed as well.").
For reasons set forth below, Nolen's federal law claims
against the City Defendants are also insufficient.  The
Court therefore defers consideration of Nolen's state law
claims against the Library Defendants until it is clear that
he is bringing viable federal claims.

II.  City Defendants' Motions to Dismiss

The City Defendants' first motion to dismiss is brought
pursuant to Fed. R. Civ. P. 41(a)(2), seeking dismissal
without prejudice due to Nolen's health.  (Doc. 41.)  As
stated in the Rule, however, a Rule 41(a)(2) motion is
brought by the *plaintiff* when seeking permission to withdraw
a claim without prejudice.  *See* Fed. R. Civ. P. 41(a)(2).
Defendants may avail themselves of relief under Rule 41(b),
which if granted, generally operates as "an adjudication on
the merits."  Fed. R. Civ. P. 41(b).  Since the City
Defendants filed their motion, Nolen has appeared before the
Court and expressed his desire to continue with the case.

Defendants have not set forth any arguments for dismissal
with prejudice under Rule 41(b), and their reliance upon
Rule 41(a) is misplaced.  Their first motion to dismiss
(Doc. 41) is therefore DENIED without prejudice.

The City Defendants' second motion to dismiss argues
that delivering a notice of trespass does not constitute an
actionable wrong.  (Doc. 50.)  This Court has previously
described the nature of a trespass notice under Vermont law:

> A notice against trespass merely informs the
> recipient that he or she is not to enter onto
> certain private property.  Indeed, the Vermont
> Supreme Court has stated that a notice against
> trespass has "no legal significance beyond acting
> as a necessary predicate to a criminal prosecution
> for trespass."  *Maarawi v. Parenteau*, No.
> 2001-230, 2001 WL 36140136, at *1 (Vt. Dec. Term
> 2001) (unpublished).  Under 13 V.S.A. § 3705(a),
> other forms of notice against trespass include
> "signs and placards" such as a "No Trespassing"
> sign posted by a landowner. An oral communication,
> provided it is unequivocal, will also suffice.

*Pietrangelo II v. Alvas Corp.*, 2010 WL 3323701, at *3 (D.
Vt. May 19, 2010).  In addition to describing a notice as
"of no legal significance," *Maarawi*, 2001 WL 36140136, at
*1, the Vermont Supreme Court has held that "[p]roviding
written notice [under the trespass staute] to a person that
the person is not permitted to enter a particular piece of
property is not an actionable wrong for which damages may be

21

sought." *Morse v. Sprague*, 2004 WL 5583289, at *1 (Vt. Jan. Term 2004) (unpublished).

In this case, Nolen accuses the City Defendants of not only delivering the no trespass notice, but of also advising complainants to serve such orders upon "individuals such as the Plaintiff," and that this advice violates individuals' civil rights. Nolen further claims that the City Defendants have "encourage[d] complainants to retaliate against the subjects of the 'no-trespass order' by so doing in retaliation for the subject exercising of his/her constitution[al], civil and/or other rights and/or privileges." (Doc. 3 at 13.)

As with his claims against the Library Defendants, Nolen's allegations against the City Defendants are unclear. He appears to be claiming that Barre police regularly advise "complainants" to issue no trespass orders. He does not explain, however, how providing such advice would constitute a civil rights violation. Nolen also alleges that the police encourage such "complainants" to engage in retaliation against the recipients of no trespass orders, perhaps by issuing the orders themselves. As discussed above, if Nolen is attempting to bring a claim of First

22

Amendment retaliation, that claim has not been sufficiently
pled.

The clearest allegation against any City Defendant is
the claim that Officer Ross violated Nolen's First Amendment
rights.  Because the Vermont Supreme Court has held that a
notice of trespass is "of no legal significance," and that
delivery of such a notice is "not an actionable wrong," the
Court finds that Nolen has failed to state a plausible
claims against Officer Ross.  The City Defendants' second
motion to dismiss (Doc. 50) is therefore GRANTED, with leave
to amend.

To the extent that any state law claims are being
raised against the City Defendants, the Court again defers
consideration of those claims until it is clear that Nolen
is bringing viable federal claims.

III.  Leave to Amend

Second Circuit precedent counsels that *pro se* litigants
must generally be provided leave to amend their pleadings at
least once "when a liberal reading of the complaint gives
any indication that a valid claim might be stated."  *Branum
v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed.
R. Civ. P. 15(a) (courts should "freely give leave [to

23

amend] when justice so requires"). Such leave is granted in this case. If Nolen chooses to file an Amended Complaint, he must do so within thirty (30) days. The Amended Complaint must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure, and will completely replace the initial Complaint. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). If Nolen fails to file an Amended Complaint within thirty (30) days, his federal claims will be DISMISSED as to all parties with prejudice, and his state law claims will be DISMISSED without prejudice.

<u>Conclusion</u>

For the reasons set forth above, the Library's motion to dismiss (Doc. 40) is GRANTED; the City Defendants' first motion to dismiss (Doc. 41) is DENIED; the City Defendants' second motion to dismiss (Doc. 50) is GRANTED; and this case will be DISMISSED unless Nolen files an Amended Complaint within thirty (30) days.

Dated at Burlington, in the District of Vermont, this

30th day of July, 2013.

       /s/ William K. Sessions III
       William K. Sessions III
       Judge, United States District Court